**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD**

**BETTY SUE MEADOWS,**
    **Plaintiff,**

**v.**                                                    **CASE NO. 1:13-cv-20611**
**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

        **Defendant.**

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for disability insurance benefits (DIB) and supplemental security income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.   By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the Court are Claimant's Memorandum in Support of Complaint (ECF No. 10) and Defendant's Brief in Support of the Defendant's Decision (ECF No. 13).

<u>Background</u>

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. In both applications filed on January 20, 2011, Claimant alleges that she became unable to work because of a disabling condition beginning on October 16, 2010 (Tr. at 70).  The claims were denied initially and upon reconsideration (Tr. at 30 and 41).

1

Claimant filed a written request for a hearing by Administrative Law Judge (ALJ) on August 2, 2011 (Tr. at 44).  In her request, Claimant stated that she was unable to engage in any type of substantial gainful activities due to a combination of impairments (Tr. at 44).  An administrative hearing was conducted on September 7, 2012 (Tr. at 424-458).  In the Decision dated October 5, 2012, the ALJ determined that based on the application for a period of disability and disability insurance benefits and supplemental security income, the claimant has been disabled beginning on July 2, 2012.  On November 26, 2012, Claimant requested a review by the Appeal Council (Tr. at 10).

On July 2, 2013, the Appeals Council received additional evidence from Claimant which it made part of the record (Tr. at 9).  A brief submitted by Deborah Garton, Esq., dated November 26, 2012, was admitted as Exhibit 15E; Treatment notes from Abed A. Koja, M.D., dated March 25, 2011, through June 20, 2011, were admitted as Exhibit 24F; and A letter prepared by Eric S. McClanahan, D. O., dated October 18, 2012, was admitted as Exhibit 25F.  On July 2, 2013, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" (Tr. at 6).  The Appeals Council stated that the reasons for the disagreement with the decision and the additional evidence was considered, but found that this information did not provide a basis for changing the ALJ's decision (Tr. at 6-7).  On July 18, 2013, Claimant brought the present action requesting that the decision of the ALJ be reversed and the claimant be awarded benefits to which she is entitled.

Under 42 U.S.C. § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any

medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2013).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2013).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date (Tr. at 17).  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease of the lumbar spine with spondylosis; osteoarthritis of the right AC joint; osteoarthritis of multiple joints; depression; and generalized anxiety.  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in 20 C.F.R. 404 Subpart P, Appendix 1 (Tr. at 18).  The ALJ then found that Claimant has a residual functional capacity (RFC) for sedentary work, reduced by nonexertional limitations[1] (Tr. at 22).  As a result, Claimant cannot return to her past relevant work (Tr. at 24). The ALJ held that prior to the established disability onset date, Claimant was a younger aged individual, 45-49 years old.  On July 2, 2012, the day before Claimant's birthday, Claimant's age category changed to an individual closely approaching advanced age, 50-54 years old.  The ALJ concluded that prior to July 2, 2012, Claimant could perform sedentary jobs such as a final assembler (Tr. at 21).  On this basis, benefits were granted beginning on July 2, 2012 (Tr. at 25-26).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

---

[1] Claimant must be given a sit/stand option.  Claimant can perform occasional balancing, stooping, kneeling, crouching, crawling, and climbing.  Claimant should never climb ladders, ropes or scaffolds.  Claimant should avoid concentrated exposure to extreme temperatures of hot and cold, vibrations and hazards including machinery and heights.  Claimant can perform simple, routine tasks, but not complex tasks and should only occasionally interact with the public and co-workers.  Claimant can perform low stress jobs which that include only occasional decision making and work setting changes.

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on July 3, 1962.  Claimant turned 50 years old shortly before the hearing.  Claimant is married to Gary Lee Meadows.  Mr. Meadows was born on January 28, 1968 (Tr. at 399).  Mr. Meadows applied for SSI on or about April 27, 2011, asserting the disability onset date of June 1, 2005.  Claimant has a high school diploma (Tr. at 431).  She previously worked as a daycare worker and as a receptionist in a doctor's office.

The Medical Record

Claimant was seen at the Princeton Community Hospital on August 8, 2009, after being involved in a 4-wheeler accident (Tr. at 163-175).  Claimant reported to experiencing back pain. Afzal U. Ahmed, M.D., reviewed her radiology report and reported "Mild narrowing of the L5-

S1 disc space, [with] no evidence of displaced fracture" (Tr. at 174).  Dr. Ahmed reported that

both of Claimant's hips and S1 joints appeared unremarkable (Tr. at 175).

On September 4, 2009, Claimant reported to Princeton Community Hospital where

Edward D. Aycoth, M.D., reviewed her radiology report of a bilateral renal sonogram (Tr. at

176).  Dr. Aycoth's impression was reported as "negative examination."  The same day, Dr.

Ahmad reviewed Claimant's radiology report of a complete pelvic sonogram (Tr. at 177).  His

impression was "Trace of fluid in the cul-de-sac, [with] couple of fibroids in the uterus seen as

described, bulky uterus."  He identified 4 mm thick endometrial echoes.  He reported that a small

benign cyst was in Claimant's left ovary but otherwise her right and left ovaries were

remarkable.  David L. Groten, M.D., reviewed Claimant's radiology report on her lumbar spine

(Tr. at 178).  He reported that "No fracture of the lumbar spine is identified."  Dr. Groten also

reviewed the radiology report on Claimant's pelvis and right hip (Tr. at 179).  He reported that

"No fracture of the pelvis or right hip is identified."

On August 10, 2010, Claimant reported to Bluestone Health Center with complaints of

low back and hip pain, numbness in leg and toes and weight loss (Tr. at 217).  Jessica Hall, a

nurse practitioner, saw Claimant.  Claimant's reason for visiting Bluestone Health Center that

day was for low back pain over the past year, now radiating down left leg.  Claimant reported

that she lost health insurance after she had an MRI and didn't go back to the provider for a

follow-up.  Claimant reported that her back pain did not interfere with movement.  She reported

numbness down her left leg and into her left toes.  She also reported to weight loss from 175 lbs

to 107 lbs over the previous year without any changes in dietary habits.  Claimant continued to

visit the Bluestone Health Center for pain through March 18, 2011.  Ms. Hall saw Claimant on

March 18, 2011 (Tr. at 318).  Ms. Hall reported a plan for referrals for Claimant's anxiety

disorder and lumbosacral radiculopathy.  Ms. Hall ordered labs for chronic pain and fatigue. Ms. Hall referred Claimant to neurosurgeon Abed Koja, M.D. (Tr. at 318, 245-246).

On December 20, 2010, Riaz Uddin Riaz, M.D., a Board Certified Psychiatrist with Bluefield Mental Health Center, P.C., performed a psychiatric evaluation of claimant (Tr. at 183-186).  Dr. Riaz reported Claimant's chief complaint as being nervous, anxious and depressed.  Dr. Riaz reported that she gets upset and cries easily (Tr. at 183).  Dr. Riaz's oberservations stated that Claimant "has moderate psychomotor retardation.  She appears depressed and anxious.  She was wringing her hands and crying during the interview" (Tr. at 185).

Dr. Riaz reported Claimant's daily activities to include showering and dressing herself with help.  Claimant cooks, cleans and shops with help.  She reported to reading and watching television on occasion.  She reported to not having any hobbies.  She visits with friends, relatives and neighbors sometimes.  Under mental status examination, Dr. Riaz reported that Claimant's affect was constricted; her mood was depressed and anxious; her speech was non-spontaneous; and she expressed feelings of worthlessness, hopelessness and uselessness all the time.  She reported to sometimes experiencing suicidal thoughts although she had never attempted suicide.  She denied experiencing hallucinations.  Dr. Riaz reported that Claimant's memory for remote events was good, although her memory for recent events was only fair (Tr. at 186).  Claimant's insight and judgment were present.

Dr. Riaz's prognosis for Claimant was "poor."  Dr. Riaz's opinion was that Claimant "has a combination of emotional and physical problems which make her incapable of gainful employment.  She would be unable to interact appropriately with co-workers and supervisors.

She would be unable to perform routine repetitive tasks at a sustained level.  She is not a suitable candidate for [vocational rehabilitation]." (*Id.*)

On March 7, 2011, State agency psychological consultant, Paula J. Bickham, PhD, performed a psychiatric review of Claimant's records from October 16, 2010, to March 7, 2011 (Tr. at 187).  When listing what records she reviewed, Dr. Bickman's consulting notes report her review was based solely on Dr. Riaz's psychiatric evaluation (Tr. at at 199).  Dr. Bickman's notes did not identify any other medical records.  Although Dr. Riaz opined that Claimant's emotional and physical problems rendered her incapable of gainful employment, Dr. Bickman found Claimant's alleged impairments of Listings 12.04 for affective disorders and 12.06 for anxiety-related disorders to not be severe.

On March 22, 2011, Marcel Lambrechts, M.D., a medical consultant, performed a physical RFC of Claimant (Tr. at 234-241).  Dr. Lambrechts found Claimant was able to lift/carry 20 lbs occasionally; able to lift and carry 10 lbs frequently; able to stand and/or walk for less than 2 hours in an eight-hour workday; sit for about 6 hours in an eight-hour workday, with a sit and/or stand option; and to have no limitation on pushing and/or pulling, beyond her limitation for lifting and/or carrying.  Dr. Lambrechts found Claimant "to be mostly credible" (Tr. at 239).  He commented that her RFC should be reduced as noted in his assessment because she had a herniated disc at L5-S1 and radicular symptoms to her left leg.

Claimant consulted with Dr. Koja, per Ms. Hall's referral, on March 25, 2011 (Tr. at 245-246).  Dr. Koja's impression included a herniated lumbar disc at the L5-S1 level with lumbar spondylosis (Tr. at 245).  Dr. Koja reviewed Claimant's MRI and found it consistent with his impression (Tr. at 246).  Dr. Koja reported seeing Claimant for a follow-up visit on June 20,

2011 (Tr. at 331).  He reported that Claimant's back and left leg pain had not improved with conservative treatment.  Dr. Koja reported "There is moderate pain with flexion and extension. Straight leg raising is positive at 60 degrees in the left, no radicular pain to the calf.  There is no weakness.  Knee jerk and ankle jerk is symmetrical."  (*Id.*)  Dr. Koja discussed back surgery with Claimant.  Claimant saw Dr. Koja on April 25, 2011, for a follow-up visit (Tr. at 242).  Dr. Koja's notes state "Patient returns continuing to complain of back and left leg pain.  Her exam is unchanged.  She did not respond to the epidural blocks."  Dr. Koja reviewed her MRI again and noted she had grade 1 spondylolisthesis at the L5-S1 level with disc herniation at the L5-S1 level."  He discussed minimally invasive surgery as an option because she did not improve with conservative treatment.

On or around April 12, 2011, Claimant began seeing Eric McClanahan, D.O., with East River Medical, PLLC, in Bluefield, West Virginia as her primary care provider (Tr. at 276-290). His treatment from approximately April 12, 2011, through April 16, 2012, included referring Claimant to specialists, running tests and prescribing medications including pain medications (Tr. at 276-291).

On May 9, 2011, Uma Reddy, M.D., a medical consultant, performed a physical RFC of Claimant (Tr. at 247-254).  Dr. Reddy found Claimant was able to lift/carry 20 lbs occasionally; able to lift and carry 10 lbs frequently; able to stand and/or walk for about six hours in an eight-hour workday; sit for about 6 hours in an eight-hour workday; and to have no limitation on pushing and/or pulling, beyond her limitation for lifting and/or carrying (Tr. at 248).  Dr. Reddy found Claimant "to be mostly credible" (Tr. at 252).  He commented that her RFC was limited due to her back pain due to a herniated disc. Dr. Reddy stated that Claimant was on pain medication but did not seem to have any significant neurological deficits.

9

On July 2, 2011, State agency psychological consultant, Debra Lilly, PhD, performed a psychiatric review of Claimant's records from October 16, 2010, to July 2, 2011 (Tr. at 262). When listing what records she reviewed, Dr. Lilly's consulting notes report her review was based on Dr. Riaz's psychiatric evaluation and office visit records from Bluestone Health Center[2] (Tr. at at 274).  Although Dr. Riaz opined that Claimant's emotional and physical problems rendered her incapable of gainful employment, Dr. Lilly found Claimant to experiencing mild limitations in activities of daily living and maintaining social functioning (Tr. at 272). Dr. Lilly found Claimant to experience moderate limitations in maintaining concentration, persistence or pace. Dr. Lilly found that Claimant did not experience any episodes of decompensation.

On August 22, 2011, Dr. McClanahan completed a Medical Assessment of Ability to do Work Related Activities (Tr. at 292- 294).  Dr. McClanahan's assessment stated Claimant was able to lift/carry less than 10 lbs occasionally; able to lift and carry less than 10 lbs frequently; able to stand and/or walk for less than 2 hours in an eight-hour workday; and sit for about 2 hours in an eight-hour workday.  Dr. McClanahan stated that Claimant does not need the use of a cane to ambulate.  She could occasionally operate foot controls, climb stairs/ramps and stoop. She should never climb ladders/ropes/scaffolds, balance, kneel, crouch or crawl.   Dr. McClanahan reported that Claimant's back pain worsened from any bent posture (Tr. at 293). Dr. McClanahan reported Claimant to be credible.  He anticipated that Claimant would need to be absent from work more than 3 times a month due to her impairments or treatment (Tr. at 294). Dr. McClanahan reported that his responses were based upon his "own findings and conclusions, as opposed to the patient's self-reporting."

---

[2] Dr. Lilly's consulting notes reflect that she had unsuccessfully attempted to obtain Claimant's medical records from Southern Highlands (Tr. at 274).

Dr. McClanahan referred Claimant to Barbara Romfo, PhD, Licensed Psychologist with Laruel Ridge Psychological Associates, on August 12, 2011 (Tr. at 309-311).  Dr. Romfo's clinical notes dated September 19, 2011, reflect that Claimant was experiencing marital problems which had escalated to the point of Claimant obtaining a restraining order against her husband (Tr. at 297).  Dr. Romfo's observations reflect that Claimant was extremely fatigued and unable to stop crying.  Dr. Romfo saw Claimant again on October 24, 2011, and November 14, 2011 (Tr. at 298-299).   Claimant reported experiencing pain of medium to high in degree.  Dr. Romfo reported that Claimant's eye contact had improved (Tr. at 299).

Dr. Romfo saw Claimant on December 19, 2011 (Tr. at 300).  Claimant reported to feeling overwhelmed.  She reported that she was communicating with her estranged husband. Dr. Romfo's clinical notes stated that Claimant "hates being dependent on family – fears loss of insurance."  Dr. Romfo reported Claimant's depression to be worse.  She found Claimant's apathy and indifference to have markedly worsened.  Dr. Romfo's observations reflected that Claimant's affect was blunted and tearful.  Claimant only seemed to "brighten" up when speaking about her grandson.

Dr. Romfo saw Claimant on January 23, 2012 (Tr. at 301).  Claimant was reported as possessing fair to good rapport.  Dr. Romfo observed that Claimant's mood had improved.  On May 7, 2012, Dr. Romfo saw Claimant and reported to reconciling with her husband and living with him again (Tr. at 302).  Dr. Romfo reported that Claimant had planned to divorce her husband after his act of infidelity and that she had exhausted her financial resources.  Dr. Romfo observed that Claimant continued to struggle with chronic pain and anxiety.

11

On June 3, 2012, Dr. Romfo completed a medical source statement form for Claimant. It reflected Claimant's ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual; complete a normal workday or workweek; and perform at a consistent pace to be extremely limited. Claimant's ability to remember locations and work-like procedures; carry out short, simple instructions; understand and remember detailed instructions; carry out detailed instructions; sustain an ordinary routine without special supervision; work with or near others without being distracted by them; and making simple work-like decisions was found to be markedly limited (Tr. at 305). On June 4, 2012, Dr. Romfo reported Claimant brought paperwork for social security application (Tr. at 303). Claimant discussed experiencing hearing problems and her insurance denying coverage for hearing aids. She reported to being on friendly terms with her husband. Dr. Romfo observed Claimant's mood to have mildly improved.

On the medical source statement, Dr. Romfo reported that Claimant did not experience any limitations in understanding and remembering short, simple instructions. Dr. Romfo reported Claimant to consistently present physical rigidity and slowed pace due to extreme pain. Dr. Romfo stated that Claimant "becomes uncomfortable sitting to the point where she needs to move about. She is easily distracted by her pain, making it difficult to make new memories. Her tendency to forget things is evidenced from session to session" (Tr. at 306). Dr. Romfo reported Claimant to be moderately restricted in her ability to interact appropriately with the public. Dr. Romfo reported Claimant to be markedly restricted in her ability to interact appropriately with supervisor(s); interact appropriately with co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to change in a routine work setting. Dr. Romfo

stated that Claimant "presents with a moderate to severe level of depression with accompanying irritability and anxiety that limit her ability to cope with change, frustration and negativity." (*Id.*)

Further the medical source stated, Dr. Romfo reported Claimant as able to manage her benefits in her own best interest (Tr. at 307). Dr. Romfo stated "My estimation of [Claimant's] frustration tolerance is that it is quite low." Dr. Romfo reported Claimant's complaints to be credible and consistent with her findings and diagnosis. Dr. Romfo reported to only knowing about Claimant's onset of her <u>disability</u> according to Claimant's self-reporting. Dr. Romfo reported that Claimant's impairments or treatment would cause her to be absent from work more than 3 times a month. Dr. Romfo reported that her responses on the medical source statement are based upon Dr. Romfo's own findings and conclusions, not Claimant's self-reporting.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence. Claimant asserts the ALJ failed to examine all of the evidence pursuant to applicable law and regulations. Claimant further asserts the ALJ created his own RFC without providing an explanation as to its origin. Claimant argues that the ALJ "gave little weight to every single physical assessment form prepared by a doctor" (ECF No. 10). Defendant asserts that substantial evidence supports the ALJ's decision that Claimant retained the residual functional capacity to perform a limited range of sedentary work and, therefore, was not disabled under the Social Security Act (ECF at 13).

<u>Analysis</u>

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to

13

provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2002). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2002). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2002). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.* §§ 404.1527(d)(2), 416.927(d)(2).

The ALJ held that the opinions of Dr. Riaz and Dr. Romfo that Claimant is unable to sustain competitive work were based on "only one occasion" (Tr. at 23). The ALJ stated "In

addition, Dr. Romfo and Dr. Riaz, who are not neurosurgeons or medical physicians, based their opinions on the combination of the claimant's physical and mental conditions." (*Id.*)   Upon reviewing Bluefield Mental Health Center's letterhead, Dr. Riaz's title reflects "Diplomate American Board of Psychiatry and Neurology" and "Member Royal College of Psychiatrists, England" (Tr. at 183).

The ALJ gave great weight to the opinions of the State agency psychological consultants, Dr. Bickham and Dr. Lilly, although their opinions were based on Dr. Riaz's report (Tr. at 23). The ALJ stated the State agency psychological consultants' opinions are consistent with "the record as a whole."  The ALJ gave little weight to the opinions of Dr. Koja and Dr. McClanahan that Claimant is limited to less than sedentary work.  The ALJ states that "these opinions appear to be based in part on the claimant's subjective complaints of pain."   However, Dr. McClanahan reported that his assessment was based upon his own findings and conclusions, not Claimant's self-reporting.

The ALJ gave little weight to the opinions of Dr. Riaz, Dr. Romfo, Dr. Koja and Dr. McClanahan without discussing the length of the treatment relationship, supportability, consistency, specialization and various other factors.  Instead, the ALJ made incorrect statements that Dr. Riaz and Dr. Romfo are not neurosurgeons or medical physicians and that they relied on the Claimant's self-reporting statements.   Further, the ALJ gave a boilerplate explanation as to why great weight was given to the opinions of the State agency psychological consultants.  The ALJ justified the granting of great weight by simply stating that "these opinions are consistent with the claimant's outpatient treatment, her activities of daily living and the record as a whole" (Tr. at 23).  When the opinions of agency experts are considered, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant

15

or other program physician or psychologist as the [ALJ] must do for any opinions from treating sources, non-treating sources, and other non-examining sources." 20 C.F.R. § 404.1527(e)(2).

After carefully reviewing the administrative record, the Court recommends the District Judge find that the ALJ's decision warrants remand, for failure to adequately discuss and weigh all of the relevant opinions.  The ALJ afforded "great weight" to the opinions of State agency psychological consultants, Dr. Bickham and Dr. Lilly, but failed to explain the rational for giving such weight. Similarly, the ALJ rejected the treating physicians' opinions as being inconsistent with the record as a whole, without further explanation.   Therefore, remand is appropriate because the ALJ failed to examine all the evidence pursuant to applicable law and regulations and failed to demonstrate that his decision is supported by substantial evidence.  Because the matter is recommended for remand, the other issues need not be addressed at this time.

Conclusion

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge REMAND the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Complaint, DENY the Brief in Support of Defendant's Decision, REVERSE the final decision of the Commissioner and REMAND this case for further proceedings.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED and a copy will be submitted to the Honorable Judge David A. Faber.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections,

identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date: August 29, 2014

Dwane L. Tinsley
United States Magistrate Judge